STATE, *ex rel.* SUPREME FOREST WOODMEN CIRCLE, v. RUSSELL G. SNOW, *et al.,* as Board of Public Instruction, Broward County, *et al.,* and J. H. Juvenal, *et al.,* as Board of County Commissioners of Broward County, *et al.*

Broward County, *et al.*
151 So. 393.
Division A.
Opinion Filed December 11, 1933.

*L. O. Casey,* for Plaintiff in Error;

*Baxter & Walton* and *R. R. Saunders,* for Defendants in Error.

TERRELL, J.—Alternative writ of mandamus was issued in this cause by the Circuit Court of Broward County directed to the Board of Public Instruction, the Board of County Commissioners, the Tax Assessor, and the Tax Collector of said county, commanding the levy, assessment, collection, and appropriation of a tax to redeem bonds and coupons held by relator against Special Tax School Districts numbered 2, 3 and 4 of Broward County.

A demurrer to the alternative writ on the part of the members of the Board of Public Instruction was sustained and a motion to quash the alternative writ on the part of the Tax Assessor, Tax Collector, and Board of County Commissioners was granted. Final judgment was entered for respondents, defendants in error here. This writ of error was prosecuted to the final judgments.

The demurrer and motion to quash raise this question: May an alternative writ of mandamus seeking to enforce payment of past due principal and interest on bonds of Special Tax School Districts Nos. 2, 3 and 4 of Broward County, command the levy, assessment, and collection of a tax sufficient to pay such principal and interest, maturing the past four years, all of which is due and unpaid, or must such assessment and collection be limited to the current year. In either event can the alternative writ command the levy, assessment, and collection of said tax or must it be limited

to the assessment and must it apply to all bond and coupon holders of a class or may it apply only to individual bond and coupon holders.

The alternative writ discloses that the relator owns interest coupons against Special Tax School District No. 2 maturing in 1931 and 1932, on two different bond issues, aggregating $1,890.00. He also owns bonds on which the principal aggregating $24,000.00 maturing $6,000.00 per annum for the years 1929, 1930, 1931 and 1932, and interest coupons maturing in 1930, 1931 and 1932, aggregating $19,690.00 against Special Tax School District No. 3 which are due and unpaid. It is further shown that he owns interest coupons aggregating $13,245.00 maturing in 1930, 1931 and 1932, principal aggregating $12,000.00, maturing $3,000.00 annually for the years 1929, 1930, 1931 and 1932 against Special Tax School District No. 4 which is due and unpaid.

The alternative writ discloses that the total past due and unpaid indebtedness of said Special Tax School Districts Nos. 2, 3, and 4, referred to herein, as evidenced by bonds and coupons is as follows: Special Tax School District No. 2, $62,760.00; Special Tax School Dist. No. 3, $162,950.00, and Special Tax School District No. 4, $69,830.00. It appears that no taxes were levied and collected to pay interest and sinking fund on any of these bonds or coupons for the years 1929, 1930, 1931, and that the writ seeks for 1932 to enforce the levy and collection of a tax for interest and sinking fund for all four said years.

The bonds and interest-bearing coupons brought in question were issued under Section 17, Article XII, of the Constitution. Some of them were issued subsequent to the amendment of this section in 1924, which in effect authorizes special tax school districts to issue bonds for the ex-

clusive use of public free schools within the district on the majority vote of the freeholders. It also provides that all such bonds shall be payable within thirty years in annual installments, each annual installment to be not less than 3 per cent of the total issue. It further provides a tax for this purpose and prohibits its use for any other purpose. The 1924 amendment referred to had for its main purpose the removal of the millage limitation and the requirement that all bonds issued thereunder be payable within thirty years.

Section 593, Revised General Statutes of 1920, Section 735, Compiled General Laws of 1927, outlines the details for issuing bonds under Section 17 of Article XII and, among other things, requires that the board of county commissioners levy annually a tax on all real and personal property, railroad, telegraph, and telephone lines owned or situated within said special tax school district sufficient to pay the interest on and to create a sinking fund to pay said bonds at maturity.

Defendants in error who were respondents below, contend that since the constitutional and statutory provisions as recited refer to and require an annual tax for interest and sinking fund on all outstanding bonds and coupons, and that since no such tax was imposed for the year 1929, 1930, 1931, and 1932, the county commissioners are now without authority to levy in one year a tax to cover these four years, including the current year.

We do not think this contention tenable nor do we think the Constitution or the statute warrant such an interpretation. Whether the required taxes are levied annually or not the statutory obligation of the special tax school district abides with it and stands as a continuing duty until performed. State, *ex rel.* J. W. Gillespie, *et al.,* v. County of

Bay, *et al.*, decided November 13, 1933; Klemm v. Davenport, 100 Fla. 627, 129 So. 904; State, *ex rel.* Dos Anigos v. Lehman, 100 Fla. 1313, 131 So. 533; Humphreys v. State, 108 Fla. 92, 145 So. 858; Little River Bank & Trust Co. v. Johnson, 102 Fla. 828, 136 So. 452. There is no contention here that the imposition of a tax for four years, including the current year, sufficient for interest and sinking fund, would be unreasonably heavy or result in the confiscation of property as was exemplified in State, *ex rel.* Gillespie v. Bay County, *supra.* The question of spreading the assessment is not, therefore, presented.

The Federal Courts hold that when the power is present to issue the bonds the obligation to levy the tax is conclusively implied unless the law which confers the authority or some general law in force at the time clearly manifests a contrary legislative intent. Loan Association v. Topeka, 20 Wall. 655, 22 L. Ed. 455; United States v. New Orleans, 98 U. S. 381, 25 L. Ed. 225; Ralls County Court v. United States, 105 U. S. 733, 26 L. Ed. 1220.

It is next contended that the alternative writ is bad because, that after commanding the county commissioners to levy or assess it commands the tax collector to collect the tax so levied but shows no duty resting on him to do so and no refusal on his part to perform that duty is present.

The practice in this Court has been to refuse the issuance of alternative writs directed to the tax collector under circumstances shown here for the reason that we require an early, full, and complete response to the writ. This rule does not necessarily prevail in the Circuit Courts. The relator, if entitled to relief, is entitled to full and complete relief. The Circuit Courts are in position to supervise performance of the commands of the writ and may direct

it to any and all parties or officials as may be necessary to secure the relief sought.

On the question of whether or not the alternative writ is bad because it requires the levy of a tax solely for the payment of relator's bonds when there are other bondholders in the same class whose bonds and coupons are due and unpaid it is sufficient to say that that question is settled contrary to the contention of respondents by the decisions of this Court. State, *ex rel.* Gillespie, *et al.,* v. Baskin, *et al.,* 102 Fla. 329, 136 So. 262; Humphreys v. State, *supra.*

The judgment below is accordingly reversed.

Reversed.

Davis, C. J., and Whitfield and Ellis, J. J., concur.

Buford, J., not participating on account of possible interest in result.

Brown, J., absent and not participating because of illness.